IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRENDA MORALES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 13-229J |
| ) | |
| CAROLYN W. COLVIN, ) | |
| ACTING COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER OF COURT

AND NOW, this  31st  day of March, 2015, upon due consideration of the parties' cross-motions for summary judgment relating to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("Act"), IT IS ORDERED that the Commissioner's motion for summary judgment (Document No. 20) be, and the same hereby is, granted and plaintiff's motion for summary judgment (Document No. 15) be, and the same hereby is, denied.

As the factfinder, an Administrative Law Judge ("ALJ") has an obligation to weigh all of the facts and evidence of record and may reject or discount any evidence if the ALJ explains the reasons for doing so. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Importantly, where the ALJ's findings of fact are supported by substantial evidence, a reviewing court is bound by those findings, even if it would have decided the factual inquiry differently. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). These well-established principles preclude a reversal or remand of the ALJ's decision here because the record contains substantial evidence to support the ALJ's findings and conclusions.

Plaintiff protectively filed her pending applications for DIB and SSI on June 22, 2010, alleging a disability onset date of November 25, 2008, due to, *inter alia*, pain in her back, neck, shoulders and knees. Plaintiff's applications were denied initially. At plaintiff's request an ALJ held a hearing on August 15, 2011, at which plaintiff, represented by counsel, appeared and testified. On January 20, 2012, the ALJ issued a decision finding that plaintiff is not disabled. On August 1, 2013, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner.

Plaintiff was 42 years old at the time of the ALJ's decision and is classified as a younger person under the regulations. 20 C.F.R. §§404.1563(c) and 416.963(c). Plaintiff has a tenth grade education which is classified as limited. 20 C.F.R. §§404.1564(b)(3) and 416.964(b)(3). She has no past relevant work experience and has not engaged in any substantial gainful activity since her alleged onset date.

After reviewing plaintiff's medical records and hearing testimony from plaintiff and a vocational expert, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. The ALJ initially found that plaintiff suffers from a number of severe physical impairments, including, *inter alia*, status post right ACL tear; degenerative disc disease of the cervical/thoracic/lumbar spine; muscle spasm; and, migraine headaches. In addition, the ALJ determined that plaintiff suffered from "memory loss." (R. 199). However, the ALJ determined that plaintiff's impairments, alone or in combination, do not meet or medically equal the criteria of any of the impairments listed at Appendix 1 of 20 C.F.R., Part 404, Subpart P.

The ALJ also found that plaintiff retains the residual functional capacity to perform sedentary work with numerous restrictions to accommodate the limiting effects of her physical and

AO 72
(Rev. 8/82)

mental impairments.[1] A vocational expert identified numerous categories of jobs which plaintiff can perform based upon her age, education, work experience and residual functional capacity, including order clerk, charge account clerk and production inspector. Relying on the vocational expert's testimony, the ALJ found that plaintiff is capable of making an adjustment to work which exists in significant numbers in the national economy. Accordingly, the ALJ determined that plaintiff is not disabled.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment which can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§423(d)(1)(A) and 1382c(a)(3)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §§423(d)(1)(B) and 1382c(a)(3)(B).

The Commissioner has promulgated regulations incorporating a five-step sequential evaluation process[2] for determining whether a claimant is under a disability. 20 C.F.R. §§404.1520

---

[1] Specifically, the ALJ found that plaintiff has the residual functional capacity to perform sedentary work except she "is limited to occasional balancing, stooping, kneeling, crouching and climbing of ramps and stairs; must never crawl or climb ladders, ropes and scaffolds; [she] must be afforded the option to stand for 10 minutes after every 1 hour of sitting; [she] is limited to occasional overhead reaching; must avoid concentrated exposure to extreme, heat, cold, wetness or vibration; must avoid any exposure to hazards such as machinery or heights; and [she] can avoid normal hazards such as doors ajar, boxes on the floor and approaching people and vehicles. In addition, [she] is limited to simple, routine tasks not performed at a production rate pace as seen in assembly line work." (R. 203).

[2] The ALJ must determine in sequence: (1) whether the claimant currently is engaged in substantial gainful activity; (2) if not, whether she has a severe impairment; (3) if so, whether her impairment meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant's impairment prevents her from performing her past-relevant work; and, (5) if so, whether the claimant can perform any other work which exists in the national economy in light of her age, education, work experience and residual functional capacity. 20 C.F.R. §§404.1520 and 416.920. In addition, when there is evidence of a mental impairment that allegedly prevents a claimant from working, the Commissioner must follow the procedure for evaluating mental impairments set forth in the regulations.

and 416.920; Newell v. Commissioner of Social Security, 347 F.3d 541, 545 (3d Cir. 2003). If the claimant is found disabled or not disabled at any step, the claim need not be reviewed further. Id.; see Barnhart v. Thomas, 124 S.Ct. 376 (2003).

Here, plaintiff raises three challenges to the ALJ's finding of not disabled: (1) new and material evidence warrants a remand for additional consideration; (2) in assessing plaintiff's residual functional capacity, the ALJ erred in giving any weight to the opinion of Dr. J. Michael Moses, plaintiff's treating orthopedic surgeon; and, (3) the ALJ failed to develop the record in regard to plaintiff's mental impairments by not ordering a consultative examination. Upon review, the court is satisfied that the ALJ properly evaluated the evidence and that all of the ALJ's findings are supported by substantial evidence.

Plaintiff's first argument is that a remand is necessary in this case so that the ALJ may consider additional records that were submitted for the first time to the Appeals Council. This additional evidence consists of 49 exhibits, designated as Exhibits 33 F - 81 F, containing over 700 pages of medical records that were not presented to the ALJ. (R. 767-1491). Although these exhibits were submitted to the Appeals Council, the Appeals Council found that "this information does not provide a basis for changing" the ALJ's decision, and denied plaintiff's request for review. Plaintiff now argues that this case should be remanded for consideration of this evidence. Upon review, this court finds that a remand is not warranted in this case.

Generally, when a claimant proffers evidence in the district court that previously was not presented to the ALJ, the district court's determination of whether to remand to the Commissioner is governed by Sentence 6 of §405(g) of the Act. *See* Matthews v. Apfel, 239 F.3d 589, 593 (3d Cir. 2001). Sentence 6 permits remand "only upon a showing that there is new evidence which is

---

Plummer, 186 F.2d at 432; 20 C.F.R. §§404.1520a and 416.920a.

material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." See also Szubak v. Secretary of Health & Human Services, 745 F.2d 831, 833 (3d Cir. 1984). "[A] claimant must satisfy all three requirements of Sentence 6 (new, material and good cause) in order to justify a remand." Matthews at 594; Szubak at 833.

Here, plaintiff can meet none of the requirements. In order to support a sentence 6 remand, "the evidence must first be 'new' and not merely cumulative of what already is in the record." Szubak, 745 F.2d at 833. "Evidence is new if it was not and could not have been presented at the prior administrative proceeding." DeMoss v. Heckler, 706 F.Supp. 303, 308 (D.Del. 1988). In this case, 33 of the 49 "new exhibits' contain records from the period prior to plaintiff's hearing on August 15, 2011, 2 cover the period during which the ALJ held the record open for the submission of any additional evidence, and, with the exception of a one-page treatment note dated February 6, 2012, contained in Exhibit 81F, the remaining 14 exhibits cover the period between the hearing and the ALJ's decision on January 20, 2012. In addition, many of these records also are cumulative of evidence that was submitted to the ALJ. Accordingly, because all of this evidence clearly was in existence prior to the ALJ's decision and could have been presented below, and much of it is cumulative in any event, a remand for consideration of this evidence would not be appropriate in this case. See Edwards v. Astrue, 525 F.Supp.2d 710, 712-13 (E.D.Pa. 2007) ("Where the allegedly new and material evidence was in existence before the ALJ's decision, remanding a case pursuant to sentence six would 'eliminate plaintiff's responsibility to present her case for disability before the [Commissioner]' and fail to serve the principle that new evidence remands 'should be narrowly circumscribed to facilitate the speedy disposition of meritorious claims'")(citations omitted).

Secondly, plaintiff cannot show that any of the exhibits are material, *i.e.*, that there is a reasonable probability that the evidence would have changed the outcome of the disability determination. Szubak, 745 F.2d at 833. In this regard, plaintiff has offered nothing but mere speculation that any of the exhibits would have altered the ALJ's decision, and the court notes that the Appeals Council specifically observed that the information does not provide a basis for changing the ALJ's determination. However, even if any of the information arguably could be deemed material, as already noted, it is not new because it could have been presented below, and plaintiff also has failed to show good cause for not incorporating it into the record below.

As good cause for her failure to submit the medical records to the ALJ, plaintiff alleges that her counsel during the administrative proceedings, Attorney David Kappel, "abandoned" her claim by failing to update the file, failing to communicate with her prior to the hearing and failing to submit additional evidence even after the ALJ kept the record open for two weeks after the hearing. The court does not believe that counsel's performance is a proper basis upon which to find "good cause" for not submitting to the ALJ available evidence.

Initially, the record does not support the allegation that Attorney Kappel "abandoned" plaintiff prior to the hearing. In fact, Attorney Kappel represented her at the hearing before the ALJ and he asked questions of plaintiff at the hearing to elicit testimony in support of her claim. Although counsel did not submit additional evidence after the hearing even though the ALJ kept the record open for two weeks, he may have made a tactical decision that the additional evidence would not help plaintiff's claim. This could also explain his decision not to submit the other evidence that plaintiff now seeks to have considered. *See* DeMoss v. Heckler, 706 F.Supp. 303, 309 (D.Del. 1988)(counsel's tactical decision not to present additional evidence at supplemental hearing and to waive attendance at hearing altogether was not good cause for remand to consider

AO 72
(Rev. 8/82)

- 6 -

additional evidence). Nor can counsel's alleged failure to communicate with plaintiff prior to the hearing be deemed good cause for the failure of plaintiff to submit the evidence. *See* Cline v. Secretary of Health and Human Services, 875 F.Supp. 435, 440 (N.D.Ohio 1995)(counsel's failure to meet with his client in person prior to hearing, coupled with failure to make ALJ aware of newly discovered belief that a psychiatric evaluation was needed and would be submitted, did not constitute good cause for sentence six remand).

The fact that plaintiff now has new counsel who believes that the additional evidence may support her claim for disability is not grounds for remanding the case under sentence 6. "Such a rule would require the court to order a new beginning in such a matter whenever an applicant acquires a new lawyer with a new idea." Geyen v. Secretary of Health and Human Services, 850 F.2d 263, 264 (5th Cir. 1988). Moreover, the court notes that one purpose of the "good cause" requirement for sentence 6 remands is " to prevent the claimant from obtaining another 'bite at the apple' in the event of an adverse decision." DeMoss, 706 F. Supp. at 309. Here, plaintiff is seeking a second bite at the apple because she is unhappy with her prior counsel's performance and the ALJ's decision. The court does not believe that plaintiff's dissatisfaction with her prior counsel constitutes adequate good cause for a remand in this case.

Plaintiff's second argument is that in assessing plaintiff's residual functional capacity, the ALJ erred in giving any weight to the opinion of Dr. J. Michael Moses, plaintiff's treating orthopedic surgeon. Dr. Moses opined in July of 2009 that plaintiff had progressed sufficiently from her knee surgery that she could return to work in mid-July. (R. 533-540). However, he also suggested that plaintiff was not motivated to work. (Id.) The ALJ explicitly addressed Dr. Moses's records in his decision and determined that they were entitled to substantial weight because they "provide significant insight into [plaintiff's] overall functioning." (R. 206).

Plaintiff contends that the ALJ should not have given any weight to Dr. Moses, who she claims was "more concerned with becoming involved in potential litigation than providing [her] with competent medical treatment." She also alleges that "inconsistencies and inaccuracies in his records as well as the personal attacks on [her] demonstrate that he cannot provide an unbiased medical opinion." The court finds no error in the ALJ's evaluation of this evidence.

First, it is clear that the ALJ gave significant weight to Dr. Moses's report to the extent it provides "insight into plaintiff's overall functioning." This was not error. Dr. Moses was plaintiff's treating orthopedist, and his report sets forth objective findings regarding plaintiff's recovery from knee surgery. As the ALJ points out, Dr. Moses's report indicates that plaintiff had made progress in her recuperation and that there was "no evidence of recurrent injury; effusion; pain, or loss of function." (R. 205). The treatment notes support this conclusion.

On March 30, 2009, Dr. Moses reported that arthroscopic surgery on plaintiff's right knee revealed a torn anterior cruciate ligament and that the remainder of the knee exam was unremarkable. He performed an ACL reconstruction which plaintiff "tolerated well." (R. 535). Two weeks later he reported that her wounds were clean and her motion is 0 degrees through 100 degrees. (R. 536). Six weeks after the surgery she had "full and complete active extension with further flexion to 100 degrees" and he reported that she was "doing well." (R. 537). On June 26, 2009, three months after surgery, Dr. Moses reported that plaintiff had "full and complete active extension" and that the examination "reveals no swelling, warmth or erythema. Her wound is well healed. She has a negative drawer sign. Negative Lachman sign. Little if any joint line tenderness." He opined that she could go back to work by mid-July. (R. 538).

In July of 2009, Dr. Moses reported that plaintiff had returned and indicated that he would be "hearing from her attorney" because she believes she could not return to work. (R. 539). He

indicated that his clinical findings from her last office visit did not suggest that she had sustained any significant recurrent injury and indicated that she had been non-compliant with physical therapy. He noted that her "motion is very acceptable" and that he did not order an additional MRI at her request because there was no recurrent instability, effusion, pain or loss of function. (Id.) Although Dr. Moses opined that "the clinical history would certainly indicate the probability of a lack of initiation of trying to get back to work," he nevertheless indicated that his office would keep her next scheduled appointment because he "would not suggest that we drop our requirement for continued care of this patient." (Id.)

On September 9, 2009, Dr. Moses' final treatment note indicates that plaintiff returned to his office demanding an MRI of her right knee. (R. 540). Dr. Moses conducted a physical examination which revealed that she walks normally, that she has no effusion, warmth or synovitis, her midline wound over her patellar tendon is well-healed, she has no pathological instability, negative Lachman sign, negative anterior drawer sign, no tenderness over her medial or lateral collateral ligaments, she had full extension, further knee flexion to 120 degrees, her hip range of motion was normal as was her neurological exam and she had little, if any, pathological atrophy of the thigh or the calf. (Id.) He also found no pathological abnormality with her ACL reconstruction. Dr. Moses refused her demand for an MRI on the basis that he believed it was not clinically necessary and that no beneficial information would be gained from it. He also reported that she refused his offer to have an x-ray done and she left his office "unhappy." (Id.)

Based on the objective findings set forth in Dr. Moses's treatment notes, the court does not find any error in the ALJ's decision to give his opinion "substantial weight" as to plaintiff's overall level of functioning. Moreover, Dr. Moses's opinion that plaintiff was progressing in her recuperation is consistent with the findings of Dr. Mary Ellen Wyszomierski, the state agency

reviewing physician,[3] as well as the other objective evidence of record which the ALJ detailed in his decision. (R. 203-206).

Although Dr. Moses did make some comments in his notes about the threat of potential litigation, and his belief that plaintiff was not motivated to return to work, it does not follow that his *objective* findings, which are consistent with other substantial evidence in the record, should be rejected. The court finds no error in the ALJ's decision to give Dr. Moses's opinion substantial weight.

Plaintiff's final argument is that the ALJ failed to develop the record with regard to plaintiff's mental impairments.[4] Specifically, plaintiff alleges that the ALJ failed to order a consultative psychological examination or to obtain a medical advisor to conduct a mental residual functional capacity assessment after the ALJ determined that plaintiff suffers from a severe mental impairment. Plaintiff's argument is without merit.

As an initial matter, the court notes that plaintiff did not seek benefits on the basis of a mental impairment, she has never been diagnosed with a mental impairment or sought any treatment for a mental impairment, and at the hearing she did not allege disability on the basis of any mental impairment. Nevertheless, because she did indicate at the hearing that she seems "to

---

[3] Pursuant to the Regulations, state agency medical consultants are considered to be "highly qualified physicians ... who are also experts in Social Security disability evaluation." 20 C.F.R. §§404.1527(e)(2)(i) and 416.927(e)(2)(i). Accordingly, while not bound by findings made by reviewing physicians, the ALJ is to consider those findings as opinion evidence, and is to evaluate them under the same standards as all other medical opinion evidence. 20 C.F.R. §§404.1527(e)(2)(ii) and 416.927(e)(2)(ii); SSR 96-6p.

[4] Social Security proceedings are inquisitorial, not adversarial and, "it is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." Sims v. Apfel, 530 U.S. 103 (2000). Moreover, while it has long been established in this circuit that the ALJ has a heightened duty to develop the record and to hold full and fair hearings when a claimant is unrepresented, Livingston v. Califano, 614 F.2d 342 (3d Cir. 1980); Dobrowolsky v. Califano, 606 F.2d 403 (3d Cir. 1979), the ALJ's obligation to develop the record applies equally where a claimant is represented. Rutherford v. Barnhart, 399 F.3d 546, 557 (3d Cir. 2005)

have problems with my memory," (R. 222), the ALJ granted plaintiff the benefit of any conceivable doubt, determined that her "memory loss" is a severe impairment, and proceeded to evaluate that impairment as required under the regulations and case law in this circuit.

As already noted, when there is evidence of a mental impairment that allegedly prevents a claimant from working, the Commissioner must follow the procedure for evaluating mental impairments set forth in the regulations. Plummer, 186 F.2d at 432; 20 C.F.R. §§404.1520a and 416.920a. Under that technique, the ALJ must first evaluate the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable impairment, then must "rate the degree of functional limitation resulting from that impairment" in four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence and pace; and, (4) episodes of decompensation. 20 C.F.R. §§404.1520a(b) and (c)(3) and 416.920a(b) and (c)(3).

The ALJ adhered to the regulations in this case. First, he determined that plaintiff has a medically determinable severe mental impairment, then he proceeded to rate the degree of functional limitation resulting from that impairment in each of the four broad functional areas. Specifically, the ALJ concluded that plaintiff has no restriction in her activities of daily living; no difficulties in social functioning; moderate limitations in concentration, persistence and pace; and no episodes of decompensation. (R. 201-02). He then accommodated plaintiff's moderate difficulties in concentration, persistence and pace in the residual functional capacity by limiting her to "simple, routine tasks not performed at a production rate pace as seen in assembly line work." (R. 203). The court finds no error in the ALJ's analysis of plaintiff's mental impairment and the ALJ's residual functional capacity finding is sufficient to accommodate plaintiff's moderate difficulties in concentration, persistence and pace. *See, e.g.*, Parks v. Commissioner of

Social Security, 401 Fed.Appx. 651, 655-56 (3d. Cir. 2010)( hypothetical limiting claimant to performing simple, unskilled work adequate to account for moderate limitations in concentration, persistence and pace); McDonald v. Astrue, 293 Fed.Appx. 941, 946-47 (3d Cir. 2008)(hypothetical limiting claimant to "simple, routine tasks" adequate to accommodate "moderate" limitations in concentration, persistence and pace); Menkes v. Astrue, 262 Fed.Appx. 410, 412-13 (3d Cir. 2008)(no error in hypothetical restricting claimant to "simple routine tasks" to account for moderate limitations in concentration, persistence and pace).

Plaintiff's contention that the ALJ improperly determined plaintiff's degree of functional limitation without consulting with a medical advisor is without merit. As the court noted in Plummer, *supra*, an ALJ has a duty to develop the record when there is a suggestion of mental impairment by inquiring into the present status of the impairment and its possible effects on the claimant's ability to work. 186 F.3d at 434. However, while the regulations *allow* the ALJ to seek the opinion of a medical expert, he is not required to. Id. at 433. Rather, the regulations allow the ALJ to remand for further review, to proceed with a determination without the assistance of a medical advisor, or to call a medical advisor for assistance. Id.; *see* 20 C.F.R. §§404.1520a(e)(5) and 416.920a(e)(5). In this regard the ALJ has more flexibility than initial hearing officers. Plummer, 186 F.3d at 433.

Moreover, the court finds no error in the ALJ's decision not to seek a consultative examination. The Regulations authorize the ALJ to obtain a consultative examination *if* the information needed to make a disability determination, "such as clinical findings, laboratory tests, a diagnosis or a prognosis" cannot be obtained from the claimant's medical sources. 20 C.F.R. §§404.1519a(a) & (b) and 416.919a(a) & (b). Before purchasing a consultative examination, the ALJ is to consider not only the existing medical reports but also the disability interview form

containing the claimant's allegations as well as other pertinent evidence in the file. 20 C.F.R. §§404.1519a(a) and 416.919a(a). After consideration of the available evidence, the Regulations provide that a consultative examination *may* be purchased "to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to support a decision on your claim." 20 C.F.R. §§404.1519a(b) and 416.919a(b). A decision whether to grant a consultative examination rests in the sound discretion of the ALJ. *See* <u>Pryborowski v. Colvin</u>, 2014 WL 3420351 (W.D.Pa., July 14, 2014)(J. McVerry)

Here, however, there was no inconsistency in the evidence and the evidence as a whole was sufficient to support the ALJ's rating of functional limitations without the need for a consultative examination. The ALJ considered plaintiff's testimony and the lack of any mental health treatment and reasonably evaluated plaintiff's mental functional limitations based on the evidence. The court is satisfied that the ALJ's rating of the degree of functional limitation arising from plaintiff's "memory loss" is supported by substantial evidence. <u>Pryborowski v. Colvin</u>, 2014 WL 3420351 (W.D.Pa., July 14, 2014)(J. McVerry)(ALJ reasonably evaluated claimant's mental functional limitations and did not abuse discretion by not seeking consultative examination.)

After carefully and methodically considering all of the medical evidence of record and plaintiff's testimony, the ALJ determined that plaintiff is not disabled within the meaning of the Act. The ALJ's findings and conclusions are supported by substantial evidence and are not otherwise erroneous. Accordingly, the decision of the Commissioner must be affirmed.

                                                        <u>s/Gustave Diamond</u>
                                                        Gustave Diamond
                                                        United States District Judge

cc: David A. Colecchia, Esq.
Law Care
324 S. Maple Avenue
Greensburg, PA 15601-3219

Stephanie L. Haines
Assistant U.S. Attorney
200 Penn Traffic Building
319 Washington Street
Johnstown, PA 15901